OPINION OF THE COURT
Michael D. Stallman, J.
Defendant is charged with having violated a Buildings Department order to discontinue a use as being contrary to the certificate of occupancy. Defendant moves to dismiss, *882 challenging the underlying Administrative Code of the City of New York section as unconstitutionally vague. At issue is whether a statute can be declared void for vagueness only as applied to one individual.
ALLEGATIONS
Defendant is the owner of the subject premises, located at 1401 66th Street, Brooklyn, New York. The certificate of occupancy, issued in or about 1953, authorizes the first floor to be used as a factory and store. On November 30, 1987, New York City Building Inspector Joseph Romeo visited the subject premises and issued a notice of violation of Administrative Code § 27-217.[1] The notice of violation charges that the first floor of the premises had been improperly converted to a "factory and office” from the "factory and store” permitted by the certificate of occupancy. The notice of violation directed defendant to "discontinue the illegal use until a certificate of occupancy authorizing such use has been issued by this department.” The notice of violation also warned the defendant: "If this violation is not corrected within ten days, you may be summoned to appear in the Criminal Court.”
On December 14, 1987 Inspector Romeo returned to the subject premises and served a summons upon defendant by personally delivering and leaving the summons with David Hirsch, the manager of the premises.[2] An information was subsequently filed with the Criminal Court charging defendant with violating Administrative Code § C26-86.5 (d) (now § 26-248 [d])[3] as having failed to comply with the notice of violation which directed him to discontinue the illegal use.
Defendant emphasizes that he is not challenging the constitutionality of any Administrative Code section as facially vague. Rather, defendant contends that he was unable to *883 recognize or understand that his conduct was in violation of law because there are no "fixed standards” in the Administrative Code that differentiate an "office” from a "store”. Accordingly, defendant argues, the local law is unconstitutionally vague as applied to him alone.
APPLICABLE STATUTES
The notice of violation and summons charge defendant with having violated Administrative Code § 27-217.[4] This provision prohibits a change in use or occupancy inconsistent with the last issued certificate of occupancy, unless or until a new certificate of occupancy has been issued for the contemplated new use.[5] The subsequently filed information charges defendant under former section C26-86.5 (d) (now recodified as § 26-248 [d]) with the misdemeanor of having failed to correct the violation.
ANALYSIS
Due process requires that a penal statute be sufficiently clear and explicit to warn that contemplated conduct is illegal. A statute is "void for vagueness” when persons "of common intelligence must necessarily guess at its meaning *884 and differ as to its application”. (Connolly v General Constr. Co., 269 US 385, 391; see, Tribe, American Constitutional Law § 12-31 [2d ed].) A vagueness-based challenge necessarily examines the statutory language on its face. The test is an objective one: Would a reasonable lay person subject to the statute know the nature of the conduct prohibited and understand what the law required? (See, People v Byron, 17 NY2d 64, 67; Matter of Pomeroy v Whalen, 44 NY2d 992, 994.) The court must examine the specific conduct claimed to have violated the statute, rather than hypothetical or speculative conduct not alleged to have been committed. Yet, the court must judge the defendant’s actual conduct by an objective, "reasonable man” standard. The sole issue is whether a reasonable person would have known that what the defendant allegedly did was against the law. (See, People v Harris, 129 Misc 2d 577 [Crim Ct, NY County].)
Consequently, a statute is either impermissibly vague or not vague, in relation to the world-at-large. A statute therefore cannot be void for vagueness as applied to any single individual. It is of no moment that one unique defendant claims he is unable to fathom that which is readily apparent to other reasonable people of ordinary intelligence.
Applying this test to the case at bar, it is clear that section 27-217 affords adequate notice that one must first obtain a new certificate of occupancy before changing a use to one not permitted by the existing certificate. If defendant had difficulty determining whether a use was permissible, or whether his contemplated action would have constituted a change in use, he could have examined the Zoning Resolution, questioned the appropriate city agency, or consulted his attorney or architect. Nevertheless, a law is not rendered impermissibly vague merely because a prudent lay person may wish to seek expert advice or an advisory opinion before acting.
Moreover, a statute cannot be considered unconstitutionally vague because it does not specifically define common words in general use. While a penal statute must be unequivocal, it may use ordinary terms to express ideas which find adequate interpretation in common usage and understanding. (People v Byron, supra, at 67; McKinney’s Cons Laws of NY, Book 1, Statutes § 271 [d].) Thus, the general rule is that words used in a penal statute should be given their usual, ordinary and commonly accepted meaning as understood by ordinary citizens. (People v Glubo, 5 NY2d 461.) Indeed, when a legislative definition is specifically included in a statute, it is evident that *885 the framers sought to accord the word a different contextual meaning than its ordinary meaning. When no such legislative definition is present, it can be safely assumed that the word’s everyday meaning is intended. Similarly, when a word is used in a pleading or an accusatory instrument, it should be accorded its ordinary meaning, unless otherwise defined by the statute.
Accordingly, neither the Administrative Code nor the pleadings here should be considered vague because they do not define or explain the words "office” and "store.” These words are commonly used and understood. An "office” is defined as "the building, room or series of rooms in which the affairs of a business * * * are carried on” (Webster’s New Twentieth Century Dictionary 1243 [unabridged 2d ed]); and as "[a] place for the regular transaction of business or performance of a particular service” (Black’s Law Dictionary 977 [5th ed]). A "store” is defined as "an establishment where goods are regularly offered for sale” (Webster’s, op. cit, at 1796); and "[a]ny place where goods are deposited and sold by one engaged in buying and selling them” (Black’s, op. cit., at 1273).
Defendant’s contention that he is unable to distinguish between the ordinary meanings of a store and an office is disingenuous. Indeed, it is contradicted by his own sworn affidavit submitted in support of the instant motion. Defendant there avers, "I have at all times used the first story of the premises at 1401 66th Street to operate a factory and a store.” Defendant attests further, "By the ordinary definition, I believe that I have at all times been operating a store, not an office, at 1401 66th Street and thus have not violated my certificate of occupancy.” It is also clear that defendant must have known what constitutes a store since that is precisely the use requested when the certificate of occupancy was issued about 35 years ago.
Finally, it is defendant’s alleged failure to comply within 10 days, with the Buildings Department order, which forms the basis of the instant criminal charge. (Administrative Code § 26-248 [d].) Defendant does not dispute service of the notice of violation ordering him to discontinue the use as an office; neither does he dispute service of a summons, more than 10 days later, charging him with failing to comply. Consequently, the validity of both the law and the instant prosecution are not in question. Rather, stripped of its formalism, the defense is simple: Defendant claims that he never violated the certificate of occupancy, and thus was not required to do anything *886 to comply with the Department order. When served with the notice of violation, he had ample warning that the city believed that he was acting illegally, and that his failure to obey the order would constitute a prosecutable offense. Defendant’s apparent inaction thereafter can only be regarded as a voluntary and calculated risk.
CONCLUSION
Defendant’s motion presents no cognizable issue entitling him to dismissal. The defense, however, is valid, and may be asserted at trial. Defendant may seek to show that on December 14, 1987, when the summons was issued, the premises were being used as a factory and store in compliance with the order of the Buildings Department and the existing certificate of occupancy.
Defendant’s motion to dismiss is accordingly denied.

. The information fails to allege the date defendant was served with the notice of violation. Since this issue was not raised by either of the parties, the court will assume, for the purpose of deciding this motion, that proper service occurred on November 30, 1987, the date appearing on the notice of violation.

. Service of the summons has not been challenged.

. The information, a standard form used by the Department of Build- . ings in criminal actions, also charges defendant with violating former sections C26-85.5 and C26-86.5 (a) and (g) of the Administrative Code of the City of New York. These are general jurisdictional provisions which empower the city to initiate judicial proceedings to compel enforcement, and punish violation of Department orders. They do not constitute offenses themselves.

. Section 27-217 of the Administrative Code of the City of New York provides in its entirety:
"§ 27-217 Change of occupancy or use. (a) No change shall be made in the occupancy or use of an existing building which is inconsistent with the last issued certificate of occupancy for such building, or which would bring it under some special provision of this code or other applicable law or regulation, unless a new certificate of occupancy is issued by the commissioner certifying that such building or part thereof conform [sic] to all of the applicable provisions of this code and all other applicable laws and regulations for the proposed new occupancy or use.
"(b) Except as provided by law, a new certificate of occupancy shall not be required where the change of use is within the same use group as listed in the amended zoning resolution. Where a building exceeds three stories in height and the change does not exceed twenty per cent of the total floor area, an amendment to the existing certificate of occupancy for such new use shall be issued by the commissioner certifying that the proposed new occupancy and use conforms to the provisions of the laws governing building construction and that the proposed use will not be in conflict with any provisions of the labor law, multiple dwelling law or the zoning resolution.”

. Defendant mistakenly cites section 26-222 of the Administrative Code of the City of New York. That provision is not applicable to the instant premises. It prohibits the use or occupancy of any building erected or altered after 1968, unless and until a certificate of occupancy has been obtained from the Buildings Department.